KLAUS J. KOLB, LLC
Klaus J. Kolb  (SBN 146531)
13620 Lincoln Way, Suite 380
Auburn, CA 95603
Telephone:  (530) 820-3435
Facsimile:  (530) 820-3453
Email: kjklaw@sbcglobal.net

Attorney for Plaintiff
SPENCER DEFTY, dba DEFTY FARMS

AMEET O'RATTAN SHARMA, ESQ.
Attorney at Law (SBN 354399)
757 Miller Avenue
Chico, CA 95928
Telephone:  (916) 932-8928
Email: ameet@omnifirms.com

Attorney for Plaintiff
DIAMOND D GENERAL ENGINEERING, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| **SPENCER DEFTY, dba DEFTY FARMS**, an individual; **DIAMOND D GENERAL ENGINEERING, INC.**, a California corporation, | **Case No.** |
| Plaintiffs, | |
| v. | **COMPLAINT FOR VIOLATION OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §1983; THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION; THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION; AND THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION** |
| **YOLO-SOLANO AIR QUALITY MANAGEMENT DISTRICT**, a municipal entity and political subdivision of the State of California; **GRETCHEN BENNIT**, in her individual and official capacity as an employee of **YOLO-SOLANO AIR QUALITY MANAGEMENT DISTRICT**; **JEFF PINNOW**, in his individual and official capacity as an employee of **YOLO-SOLANO AIR QUALITY MANAGEMENT DISTRICT**; **PAUL HENSLEIGH** in his individual and former official capacity as an employee of **YOLO-SOLANO AIR QUALITY MANAGEMENT DISTRICT**;  and **DOES 1 through 50**, inclusive, | |
| Defendants | **DEMAND FOR JURY TRIAL** |

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS                              1

Plaintiffs SPENCER DEFTY ("DEFTY") and DIAMOND D GENERAL ENGINEERING, INC. ("DIAMOND D") (collectively "Plaintiffs") allege as follows:

## JURISDICTION UNDER CIVIL RIGHTS ACT

1.      This action is based on, and seeks to redress violations of, the Civil Rights Act of 1871, 42 U.S.C. §1983; the First Amendment of the United States Constitution; the Fifth Amendment of the United States Constitution; and the Fourteenth Amendment of the United States Constitution.  Accordingly, this Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343, in that this action arises under the Constitution and the laws of the United States.  Declaratory relief is authorized by 28 U.S.C. §§2201, 2202.  This Court has jurisdiction to decide related matters of state law under 28 U.S.C. §1367(a).

## VENUE

2.      Venue lies in this District pursuant to 28 U.S.C. §1391(b)(1) because Plaintiff and at least one of Defendants reside in this District, and the events giving rise to this action occurred in this District.

## INTRODUCTION

3.      Plaintiffs DEFTY and DIAMOND D bring this action for damages and declaratory relief because Defendants YOLO-SOLANO AIR QUALITY MANAGEMENT DISTRICT ("YSAQMD" or "DISTRICT") and various employees and representatives of the DISTRICT, including the named defendants GRETCHEN BENNIT, PAUL HENSLEIGH, and JEFF PINNOW, conspired to willfully deprive DEFTY and DIAMOND D of their civil liberties protected by the First Amendment, the due process clauses of the Fifth and Fourteenth Amendments, and the equal protection clause of the Fourteenth Amendment, by means of three related courses of conduct.  First, Defendants conspired to use DEFTY and DIAMOND D as an example in an attempt to enforce an unpublished DISTRICT secret rule or "Policy" that effectively withdrew agricultural exemptions provided by California statutes for agricultural operations or equipment, from anyone other than farmers or their direct employees working on the farmers' own farm.  Second, when DEFTY and DIAMOND D objected and refused to go along with Defendants' scheme, and instead warned Defendants they would seek judicial review

of their secret rule or "Policy," Defendants conspired to retaliate against DEFTY and DIAMOND D to intimidate Plaintiffs and anyone else from supporting Plaintiffs' position, by punishing DEFTY and DIAMOND D for seeking to exercise their First Amendment rights to free speech and to petition the courts for redress. Among other things, Defendants conspired to file a complaint in California state court against DEFTY and DIAMOND D ostensibly based on three individual Notices of Violation ("NOVs") issued to DIAMOND D – a corporation of which DEFTY is CEO and a major shareholder – that falsely alleged hundreds of days of violations with penalties exceeding $75,000 per day for each violation. The DISTRICT's Complaint was also the first time the DISTRICT identified by name the unpublished, secret rule or "Policy 24" which Defendants claimed effectively revoked agricultural exemptions expressly provided by statute as to anyone other than "on the farm, by the farmer," and therefore made the exemptions unavailable to a contractor providing agricultural operations services to farmers. Further, to exert maximum pressure and penalties on DEFTY, Defendants alleged violations and sought excessive penalties exceeding $75,000 per day *not just against* DIAMOND D, but also against DEFTY individually, and against a separate limited liability company – Knotty Wood Barbecue Company, LLC ("KNOTTY WOOD") – of which DEFTY was the managing member – even though neither DEFTY individually, nor KNOTTY WOOD were ever served with NOVs by the DISTRICT. Third, when DEFTY and DIAMOND D followed through on their promise to seek judicial review of the DISTRICT's secret "Policy," Defendants attempted to misuse California's anti-SLAPP statute to further intimidate and penalize DEFTY and DIAMOND D for filing a cross-complaint against the DISTRICT seeking judicial review and a declaration that the DISTRICT's "Policy 24" was invalid and unenforceable because: (1) it contradicted express agricultural exemptions provided by statute and therefore exceeded the DISTRICT's authority, and (2) the DISTRICT purported to adopt the Policy without complying with the required statutory rule-making procedures – including public hearings, a cost-benefit analysis, and publication of a final rule. Defendants sought to pervert the anti-SLAPP statute (California Code of Civil Procedure §425.16) – intended to protect the exercise of First Amendment rights – by making baseless and false allegations in support of the DISTRICT's motion, by ignoring or mis-

characterizing the long line of precedents holding that the anti-SLAPP statute did not apply to public agencies' "acts of governance," and by threatening to seek substantial attorneys' fees against DEFTY and DIAMOND D for having the temerity to seek judicial review of the DISTRICTs attempts to enforce an unpublished and invalid rule that effectively rescinded agricultural exemptions provided by statute.

**PARTIES**

4.      SPENCER DEFTY is an individual residing in Yolo County, California.  At all times relevant to this Cross-Complaint, SPENCER DEFTY and his wife Laura Defty, dba DEFTY FARMS, are and have been an agricultural producer with their principal place of business in Yolo County.  DEFTY FARMS both conducts its own agricultural operations on real property in Yolo County owned by DEFTY FARMS, and regularly contracts with third party providers of agricultural services as part of DEFTY FARMS' agricultural operations.  For example, and without limitation, DEFTY FARMS routinely contracts with third party vendors to provide hay services on DEFTY FARMS' property.

5.      DEFTY is also the CEO of  DIAMOND D GENERAL ENGINEERING, INC. ("DIAMOND D"), which at all relevant times was and is a California corporation with its principal place of business in Yolo County California.  DIAMOND D's business consists primarily of providing agricultural operations on a contract basis to farmers and ranchers in Yolo, Solano, and surrounding counties, including field leveling, agricultural burning, and grinding of mature orchard trees at the end of orchard crop cycles.  Grinding mature orchard trees requires specialized agricultural equipment that costs in excess of one million dollars per unit to harvest what would otherwise be waste that a farmer would have to burn on the farm, and to instead convert unproductive orchard trees into wood chips that could be used as a soil enhancement by the farmer, or sold to others as a soil enhancement, bio fuel, as raw material for manufactured wood products, or further processed into wood pellets for use in barbecues.

6.      DEFTY is also the managing member of KNOTTY WOOD BARBECUE COMPANY, LLC, a California limited liability company with its principal place of business in Yolo County, California.  DEFTY invested millions of dollars building a state-of-the-art facility

that can take wood chips created by grinding mature orchard trees on the farm, and re-grind and further process them into barbecue pellets at KNOTTY WOOD's facility. KNOTTY WOOD thereby provides one of several possible markets for the agricultural commodity of ground orchard trees. By providing this opportunity for farmers, KNOTTY WOOD also enhances air quality by reducing the need for agricultural burning.

7.     Plaintiff is informed and believes, and thereupon alleges that defendant YOLO/SOLANO AIR QUALITY MANAGEMENT DISTRICT ("YSAQMD" or "DISTRICT"), is a regional air quality control district with its principal place of business in Yolo County, formed under a joint power agreement between Yolo and Solano counties pursuant to California's Health & Safety Code[1]. The California Legislature has designated regional air quality districts as the primary enforcer of air quality regulations in the State of California. Health & Safety Code §§ 4001, 40402(e), 40460(a), 40913; *Western Oil & Gas Assn v. Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 418-19. Health & Safety Code ("H&SC") §40701(b) gives the DISTRICT the power to sue or be sued.

8.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendants named in this Complaint as DOES 1 through 50, inclusive, are unknown to Plaintiffs, who therefore sue those Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of those Defendants when their names and capacities are discovered by Plaintiffs. Each allegation in this Complaint is an allegation against each such fictitiously named Defendant.

9.     In committing the acts alleged herein, each Defendant was the agent, employee and/or servant of the remaining Defendants, and in doing the things complained of herein, was acting in the course and scope of said agency, employment or servitude with the permission and consent of each named Defendant and the actions herein alleged were ratified by each principal, employer, and/or master.

[1] Unless otherwise noted, all further statutory references will be to California statutes, and all references to rules or regulations will be to those adopted by Defendant DISTRICT.

# FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

## A.  Relevant Regulatory Framework

10.   Health & Safety Code ("H&&SC") §40001(a) provides, in relevant part:

> [T]he districts shall adopt and enforce rules and regulations to achieve and maintain the state and federal ambient air quality standards in all areas affected by emission sources under their jurisdiction, and shall enforce all applicable provisions of state and federal law.

11.   Health & Safety Code §41701 limits the "opacity" of smoke or other emissions (other than water vapor).  H&SC §41704 provides that: "Section 41701 does not apply to any of the following," including:

> (b) Agricultural burning for which a permit has been granted pursuant to Article 3 (commencing with Section 41850).
>
> * * *
>
> (g) Agricultural operations necessary for the growing of crops or raising of fowl or animals.
>
> (h) The use of other equipment in agricultural operations necessary for the growing of crops or raising of fowl or animals.

12.   The California Legislature similarly expressed its intent to protect agricultural operations from certain environmental claims and legal actions by enacting the Right to Farm Act ("RTFA"), Civil Code ("Civ. C.") §3482.5.  Subdivision (a)(1) of that statute provides:

> No agricultural activity, operation, or facility, or appurtenances thereof, conducted or maintained for commercial purposes, and in a manner consistent with proper and accepted customs and standards, as established and followed by similar agricultural operations in the same locality, shall be or become a nuisance, private or public, due to any changed condition in or about the locality, after it has been in operation for more than three years if it was not a nuisance at the time it began.

In RTFA subdivision (e), the Legislature defined "agricultural operations":

> For purposes of this section, the term "agricultural activity, operation, or facility, or appurtenances thereof" shall include, but not be limited to, the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural commodity including timber, viticulture, apiculture, or horticulture, the raising of livestock, fur bearing animals, fish, or poultry, and *any practices performed by a farmer* **or on a farm as incident to or in conjunction with those farming operations**, including preparation for market, delivery to storage or to market, or deliver to carriers for transportation to market. [Emphasis added.]

13.   The Health & Safety Code delegates some of the Legislature's rule making powers to air quality management districts, subject to specified conditions.  Thus H&SC §40702 provides

(in relevant part): "A district shall adopt rules and regulations and do such acts as may be necessary and proper to execute the powers and duties granted to, and imposed upon, the district by this division and other statutory provisions ...." H&SC §§ 40703 through 40728.5 provide specific procedural requirements that must be followed by a district in adopting rules or regulations, including, but not limited to, public notice of proposed rules, specific findings in support of further rules or regulations, public hearings, and publication of final adopted rules.

14.    Until recently, the DISTRICT appeared to comply with the requirements of the relevant statutes, and formally adopted rules and regulations that were consistent with the express language of the Health & Safety Code agricultural exemptions and the Right to Farm Act.  Thus the DISTRICT's formally adopted and published Rules include:

(a)    Rule 1.1,  "Definitions" part 225 defines "Open Burning for Agricultural Operations in the Growing of Crops or Raising Fowl or Animals" as: "The burning in the open of materials produced wholly from operations in the growing and harvesting of crops or raising of fowls or animals for the primary purpose of making a profit, of providing a livelihood, or of conducting agricultural research or instruction by an educational institution, and ...."  See also similar definition of "Agricultural Burning" in part 201. Nothing in the District's Rule 1.1., parts 201 or 225, limits agricultural burning to a certain class of individuals or businesses, e.g., only to farmers burning on their own land.

(b)    The DISTRICT's Rule 2.6 recognizes that the provisions of the District's Nuisance Rule 2.5 "do not apply to odors emanating from agricultural operations in the growing of crops or raising of fowl, animals, or bees" – consistent with the protections provided in the RTFA.

(c)    The DISTRICT's Rule 3.2 "Exemptions" from permit requirements, includes Exemption 107 "Agricultural Operations," which are defined as: "Equipment used exclusively in the growing of agricultural crops or the commercial raising of fowl or other animals."  Again, the DISTRICT's rule is consistent with the plain meaning of the exemptions set forth in H&SC §41704, and with the plain language and express definition for "agricultural operations" in the RTFA, Civ. C. §3482.5.

No published rule or regulation by the DISTRICT limits the use of any of the above Exemptions or definitions to any class of people or businesses; all of the DISTRICT's published rules and regulations define exemptions in terms of the purpose of the activity or agricultural equipment used, rather than in terms of who is performing the activity or operating the equipment.

**B.  DISTRICT's Notices of Violation to Plaintiffs**

15.    On October 13, 2023, the DISTRICT apparently signed Notice of Violation ("NOV") No. 002879 to DIAMOND D for allegedly violating H&SC §41701, the opacity regulation, by operating a self-propelled tracked grinding machine on an orchard property owned by a client for the purpose of grinding orchard trees into wood chips, rather than burning them. DIAMOND D was informed of the potential NOV, but not provided with a written copy of an NOV at the time.  DEFTY, as CEO of DIAMOND D, objected to the NOV, and repeatedly, *via* emails, telephone calls, and in person, requested the DISTRICT – including defendant Gretchen Bennitt, the Air Pollution Control Office for YSAQMD, and as such the highest ranking officer within YSAQMD – to explain why operating the grinder in an orchard was not exempt from the opacity regulation under H&SC §41704(h), expressly exempting: "The use of other equipment in agricultural operations necessary for the growing of crops or raising of fowl or animals," and DISTRICT Exemption 107: "Equipment used exclusively in the growing of agricultural crops or the commercial raising of fowl or other animals."  Over the next six months, DEFTY never received a response that addressed DIAMOND D's claim to these exemptions.  DIAMOND D was not served with the formal NOV No. 002879 until March 20, 2024 – five months after the date of the alleged violation.

16.    Also on March 20, 2024 – while DIAMOND D was still waiting for an explanation as to NOV No. 002879 – DIAMOND D received NOV No. 003052, purportedly based on observations dated almost seven months earlier (September 19, 2023), about an agricultural burn of orchard trees DIAMOND D conducted for a client, pursuant to a valid burn permit obtained by the orchard's owner.  The NOV alleged as its basis: "Failure to set or allow an open outdoor fire for agricultural burning except in a manner as to produce a minimum of smoke."  The NOV did not identify what DIAMOND D could have done differently to produce a minimum of smoke.

DIAMOND D followed all applicable regulations and conducted the burn according to all customs and standards applicable to an agricultural burn, and the DISTRICT has never identified any specific additional actions that DIAMOND D should have taken "to produce a minimum of smoke."

17. The circumstances underlying NOV No. 002879 were that DISTRICT representatives had observed DIAMOND D conducting the agricultural burn and advised DIAMOND D to put out the fires once it got dark. DIAMOND D attempted to comply, but a local Fire Chief came to the site and directed DIAMOND D to let the fires burn out overnight and to keep an employee on site to monitor the fires. The local Fire Chief's directive made sense because allowing the fires to burn out would cause less smoke than trying to put them out at that point. DIAMOND D attempted to call the DISTRICT to report the fire chief's order and request clarification, but the DISTRICT offices were closed for the night. DIAMOND D therefore complied with the Fire Chief's directive, and put the fires out the next morning, after they were mostly burned out. DEFTY voluntarily contacted the DISTRICT and explained all of the above to DISTRICT representatives the next day and was assured no NOV would be issued based on the circumstances. Seven months later, on March 20, 2024, after DEFTY had objected to and repeatedly requested an explanation from the DISTRICT as to NOV 002879, the DISTRICT inexplicably changed its mind. All of the DISTRICT's form NOVs require a recipient of an NOV to: "**ADVISE THE DISTRICT IN WRITING, WITHIN TEN (10) DAYS, OF THE CORRECTIVE ACTION TAKEN TO RESOLVE THIS VIOLATION.**" Even though it is hard to conceive how DIAMOND D could take "corrective action" with respect to an agricultural burn that was put out seven months earlier, DIAMOND D complied and provided its explanation to the DISTRICT in writing, and also requested an explanation from the DISTRICT about why it issued this NOV after it had assured DIAMOND D months earlier that no NOV would be issued. Once again, the DISTRICT never provided a substantive response.

18. Also on March 20, 2024, DIAMOND D received NOV No. 003053, allegedly for failure to submit a change of ownership form and obtain a permit for its mobile grinder. The mobile grinder was originally rented by DIAMOND D, and only purchased by DIAMOND D after

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS          9

several months of use, and should not have required a permit in any event pursuant to the agricultural operations exemptions in H&SC §4107 and DISTRICT Exemption 107, among others. Once again, DIAMOND D requested an explanation from the DISTRICT, but did not receive an "on the record" substantive response.

19. All of the DISTRICT's NOV forms advise that "any person who violates any Order, Rule, or Regulation of the State Board or that of an Air Quality Management District is guilty of a MISDEMEANOR. Every day during any portion of which such violation occurs constitutes a separate offense." DISTRICT Rule 1.1, part 401.1 provides that: "Civil Penalties shall be assessed according to Health and Safety Code ... Section 42400." That section provides for penalties of up to $75,000 per day per violation and/or imprisonment for up to six months.

## C. The DISTRICT's Attempt at Secret Rule Making is Revealed.

20. DEFTY expressly requested a meeting with DISTRICT representatives to discuss all three outstanding NOVs, and to finally get a response as to why the NOVs were issued when the conduct at issue fell within agricultural exemptions. DISTRICT representatives – including defendants Bennit, Hensleigh, and Pinnow – declined to respond except in the presence of DISTRICT counsel. The resultant meeting took place on April 19, 2024. DEFTY and DIAMOND D were represented by DEFTY, individually and as CEO of DIAMOND D, and by the respective counsel for Plaintiffs. The meeting was conducted by the DISTRICT's retained counsel, Matthew Maclear, but DISTRICT representatives Jeff Pinnow, Paul Hensleigh, and Gretchen Bennitt also attended. At the beginning of the meeting Maclear requested DEFTY and counsel for Plaintiffs to sign confidentiality agreements, which DEFTY and Plaintiffs' counsel did with the understanding that the purpose of the meeting was to discuss resolution of the three individual NOVs issued to DIAMOND D.

21. Instead of discussing the individual NOVs that Plaintiffs thought were to be the subject of the meeting, Maclear began the meeting with a speech about a 76-year-old Fair Labor Standards Act ("FLSA") case, *Farmers Reservoir & Irrigation Co. v. McComb* (1949) 337 U.S. 755, 762, and *Julius Goldman's Egg City v. Air Pollution District* (1981), 116 Cal.App.3d 741. Maclear concluded that these cases allowed the DISTRICT to effectively revoke the agricultural

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS                    10

exemptions provided by statute and DISTRICT Rule whenever otherwise qualifying agricultural activities and equipment "were not performed on the farm where the crops are grown, by the farmer (or the farmers employees) who owns the farm where the crops are grown."

22. It is undisputed that those words of limitation do not appear in any statute or published DISTRICT Rule, nor in the cases cited by the DISTRICT. Maclear indicated that accepting the DISTRICT's limitation on agricultural exemptions was a prerequisite to any settlement of the outstanding NOVs. DEFTY and Plaintiffs' counsel immediately objected that the DISTRICT's *de facto* Rule contradicted express statutory language creating the agricultural exemptions, that it had much broader implications than just the three NOVs that were at issue, that it was inconsistent with farming practices in California since the days of horse-drawn farming implements, and that the *de facto* Rule was not adopted or published in compliance with statutory requirements. After asking Maclear to confirm that it was the DISTRICT's position that express agricultural exemptions that applied to activities carried out by farmers, using their own equipment, would *not* apply if the same activities, using the same equipment, were done by independent contractors, and after Maclear expressly confirmed the same, DEFTY and Plaintiff's counsel informed Maclear and the other DISTRICT representatives that DIAMOND D and DEFTY intended to seek judicial review of the DISTRICT's interpretation of the *Farmers Reservoir* and *Egg City* cases, and the language of the statutes and DISTRICT Rules that created the agricultural exemptions.

23. DEFTY and DIAMOND D delayed in filing a complaint for declaratory relief because they were concerned that Maclear's representations of the DISTRICT's position as to the interpretation of the agricultural exemptions could be covered by the confidentiality agreement DEFTY had been induced to sign. However, unknown to Plaintiffs, sometime in March or April 2024, a client of DIAMOND D (Chope Gill) who was interested in purchasing a self-propelled grinder for use on his own orchard, and for potential use on a "for hire" basis for other orchards, had requested an explanation from the DISTRICT about the regulations that would apply. Former DISTRICT representative and defendant Paul Hensleigh replied to Gill by email dated April 23, 2024, a copy of which was subsequently forwarded to DIAMOND D. The email finally stated the

DISTRICT's position in writing as to the agricultural exemptions that DIAMOND D had been inquiring about for more than six months, stating in relevant part:

> The District's position hasn't changed from Jeff's [Pinnow, YSAQMD employee and defendant] previous email. Our policy on this agricultural exemption issue has been consistent for the past 24 years. If you were to operate a grinder as a service for other farmers, you would be an agricultural service and not a business engaged exclusively in the growing of crops or raising fowl or other animals, thereby making the exemption unavailable to you. Based on legal precedent (U.S. Supreme Court, Farmers Reservoir & Irrigation Co. v. McComb (1949) 37 US 755; California Appellate Court Julius Goldman's Egg City v. Air Pollution Control District (1981) 116 Cal.App.3d 741), [sic] the District's agricultural exemptions apply to equipment used in the planting, growing, and harvesting of crops or in the raising of fowl or other animals. This includes, and is limited to, equipment exclusively used in activities carried on incidentally to or in conjunction with the planting, growing, and harvesting of crops or in the raising of fowl or other animals. ***However, those activities must be performed on the farm where the crops are raised, by the farmer (or that farmer's employees) who owns or operates the farm where the crops are §raised. This exemption does not apply to separately organized independent productive activities.*** Equipment used in activities that are carried on to produce a separate valuable commercial product (e.g. wood chips for sale) do not qualify for an agricultural exemption. That is because the equipment is not from the farm where the crops are grown, the work is not performed by the farmer who owns or manages the land and a separate commodity is being produced. [Emphasis added.]

24.     DEFTY subsequently learned that the DISTRICT, through its counsel, filed its pre-emptive state court Complaint against DEFTY, DIAMOND D, and KNOTTY WOOD on April 26, 2024, a week after the April 19 meeting with Plaintiffs and three days after the District sent its email response to Chope Gill, quoted above. However, the DISTRICT did not serve a copy of its complaint (by Notice and Acknowledgment) on DEFTY, DIAMOND D, or KNOTTY WOOD until May 16, 2025, with service of the Complaint effective pursuant to C.C.P. §415.30 on June 3, 2024. Once Plaintiffs saw the DISTRICT's Complaint, it became obvious that the DISTRICT filed its Complaint not to enforce just the three NOVs that had been issued to DIAMOND D, but alleged that it was suing to enforce hundreds of days of violations by DEFTY, DIAMOND D, and KNOTTY WOOD, and was seeking penalties up to $87,825 per day.

25.     The DISTRICT's lengthy Complaint purports to be about enforcing NOVs, but it was obviously filed in response to DEFTY and DIAMOND D's stated intent to seek judicial review of the DISTRICT's position that the agricultural exemptions provided in the H&S §41704, the RTFA, Civ. C. §3482.5, and in the DISTRICT's own published Rule 3.2, §107, were limited to "on the farm, and by the farmer." The DISTRICT's Complaint goes to great lengths to

intentionally and falsely portray DEFTY, DIAMOND D, and KNOTTY WOOD as serial violators of environmental statutes and regulations. Plaintiffs are informed and believe and thereupon allege that the District's overblown allegations of violations against DEFTY, DIAMOND D, and KNOTTY WOOD – that far exceed the three NOVs actually issued to DIAMOND D – and corresponding demands for excessive penalties, constitute an attempt to coerce and intimidate DEFTY and DIAMOND D to surrender and accede to the DISTRICT's *de facto* Rule, and give up on their stated intent to seek declaratory relief as to the DISTRICT's attempt to enforce an invalid secret rule that effectively revokes the agricultural exemptions provided by statute for contractors who provide agricultural operations or services to farmers and ranchers.

26.     Plaintiffs are informed and believe, and thereupon allege that in addition to the allegations in the DISTRICT's Complaint, Defendants contacted various agricultural trade associations and individual agricultural producers and processors and falsely represented that Plaintiffs were serial violators of environmental regulations and were improperly challenging and defying legitimate DISTRICT compliance and enforcement activities. Plaintiffs are informed and believe, and thereupon allege, that these representations were made to third parties in a further attempt to intimidate Plaintiffs and discourage Plaintiffs' exercise of their First Amendment rights, and to intimidate others in the agricultural community from supporting Plaintiffs.

27.     After receiving the DISTRICT's Complaint, DEFTY and DIAMOND D reformulated their draft declaratory relief complaint into a Cross-Complaint. The Cross-Complaint remains focused on seeking judicial review of the DISTRICT's announced *de facto* Rule, subsequently identified as "Policy 24" in the DISTRICT's Complaint. Thus paragraph 28 of the Cross-Complaint provides:

> Cross-Complainants seek a declaration that the DISTRICT's secret regulation, effectively amending or repealing the agricultural exemptions set forth in Health & Safety Code §41704 and DISTRICT Rule 3.2, Exemption 107, is void and unenforceable because it violates the unambiguous language of Health & Safety Code §41704 and DISTRICT Rule 3.2, Exemption 107, is inconsistent with the Legislature's intent as expressed in Health & Safety Code §41704, and because the secret regulation was adopted in violation of the statutory requirements for amending or repealing existing regulations, as set forth in Health & Safety Code §§ 40702 through 40728.5.

28.     The DISTRICT's Complaint, at paragraph 38, alleged, for the first time, that the

"policy" referred to in the DISTRICT's meeting with DEFTY and DIAMOND D representatives on April 19, 2024, and referred to again in the DISTRICT's April 23, 2024, email to Chope Gill quoted above, was identified as "District Policy 24." The Complaint alleges that this Policy provides, among other things, that the agricultural operations exemptions provided by statute and restated in DISTRICT Rule 3.2, section 107, "does not apply: if those activities are not performed on the farm where the crops are grown, by the farmer (or the farmer's employees) who owns or operates the farm where the crops are grown; ...." The DISTRICT had never provided DEFTY, DIAMOND D, or KNOTTY WOOD with a copy of the alleged "District Policy 24," nor was any version of "District Policy 24" available on the DISTRICT's website as of the date the DISTRICT filed its Complaint, nor did the DISTRICT ever describe the substance of its alleged "District Policy 24" in any written communication to DEFTY, DIAMOND D, or KNOTTY WOOD before the DISTRICT filed its Complaint.

29.     The DISTRICT's Complaint and discovery responses are consistent with the DISTRICT's position as presented in the April 19, 2024 meeting. The Complaint (para. 38) for the first time identifies the DISTRICT's *de facto* Rule as "District Policy 24," and confirms the DISTRICT's position that the agricultural operations exemptions provided by statute and DISTRICT Rule 3.2, §107, "does not apply: if those activities are not performed on the farm where the crops are grown, by the farmer (or the farmer's employees) who owns or operates the farm where the crops are grown; ...." Paragraph 76 of the Complaint alleges (in relevant part):

> Defendants do not engage in agricultural operations, *as defined in the District Rules and State laws* when performing services on farms other than their own or when processing materials obtained from non-contiguous agricultural properties, because when that occurs Defendants engage in a separately organized independent productive activity, ..." [Italics added.]

The only "District Rules and State laws" cited in the Complaint that address agricultural services "perform[ed] on farms other their own" is Policy 24.

30.     The DISTRICT's discovery responses (received before the DISTRICT filed its anti-SLAPP motion) confirm its earlier representations to DEFTY, DIAMOND D and Chope Gill. For example, Request for Admission ("RFA") No. 16 requested the DISTRICT to admit the agricultural exemptions as set forth in H&SC §41704. The DISTRICT admitted that the RFA

accurately quoted the statutory exemptions, "but Deny to the extent that the exceptions listed do not apply to the violations at issue because Defendants' activities and operations do not qualify as, or constitute, an agricultural operation ...." Among the more than page-long formulaic objections, the DISTRICT objected:

> The People further object that this request is misleading insofar as Defendants and their activities and operations do not qualify as, or constitute, an agricultural operation. (*Farmers Reservoir & Irrigation Co v. McComb, Wage & Hour Administrator* (1948) 337 US 755; [citation omitted]; *Julius Goldman's Egg City v. Air Pollution Control District* (1981) [16 Cal.App.3d 741].)

The DISTRICT's responses to Form Interrogatory 17.1, which follows up on the DISTRICT's RFA responses, provides further confirmation that the DISTRICT was treating its Policy 24 as a *de facto* Rule. The DISTRICT's response regarding RFA No. 11 represents:

> The original policy was signed by Mat Ehrhardt on 6/6/2000; the Policy was subsequently revised by Paul Hensleigh in 2022. *The requirements of Policy 24, moreover,* **have been consistently applied** *to all sources, including agricultural service providers,* **some of which have been subject to Notices of Violations issued by the District.** ... *Since 2013, District Staff has informed various members of the public* via email, including farmers and agricultural service providers, **of the various requirements of Policy 24,** *including that the exempt activity must take place on a farm and cannot be separately organized as an independent productive activity.*" [Emphasis added.]

The DISTRICT's response regarding RFA No. 8 swears that since DISTRICT counsel provided an April 21, 2000 memo that was adopted as Engineering Policy 24 on June 6, 2000:

> *staff have consistently processed permit applications (and exemption requests) based on that policy.* Each time staff worked with sources, the guidance provided to sources (the public) was based on this policy. Jeff Pinnow emailed Chope Gill of Reveille Farms on April 10, 2024, *with an explanation of grinder PERP and District permitting in light of Policy 24's* requirements. On March 22, 2022, Paul Hensleigh emailed Dan Pronsolino of Cortina Hulling and Shelling, LLC, as well as Roger Isom, President/CEO of the California Cotton Ginners and Growers Association and Western Agricultural Processors Association, and Greg Giguire of Matchbook Winery *explaining* the general requirements of "Policy 24" including *that exempt agricultural operations* must be *"done on the farm, by the farmer, and not create a valuable commodity."* ... [Emphasis added.]

31.     Plaintiffs are informed and believe, and thereupon allege, that the DISTRICT's assertion in its Complaint that its "policy on this agricultural exemption issue has been consistent for the past 24 years" is blatantly false. Plaintiffs will prove at trial that the plain language "agricultural operations" has been commonly understood to include "the production, cultivation, growing, and harvesting of any agricultural commodity, ... and any

practices performed by a farmer *or on a farm* as incident to or in conjunction with those farming operations, including preparation for market, delivery to storage or to market, or deliver to carriers for transportation to market," as expressly defined by the Legislature in the RTFA (italics added) Civ. C. §3482.5(e).  More specifically, Plaintiffs are informed and believe, and intend to prove at trial, that "agricultural operations" have been commonly understood, since the days horse-drawn implements were used on farms in California, to include work performed on a farm and in conjunction with farming operations not only by the farmer who owns the farm, but by contractors hired by the farmer, and by neighbors and other farmers who assist one another in various aspects of farming, including planting, harvesting, and preparing fields and orchards for the next crop after the previous crop cycle has ended. Moreover, Plaintiffs are informed and believe, and intend to prove at trial that even after the DISTRICT filed its Complaint against DEFTY, DIAMOND D, and KNOTTY WOOD, the DISTRICT still was not enforcing its Policy 24 limitation on agricultural exemptions on any agricultural operations contractors other than DEFTY and DIAMOND D.  Plaintiffs have direct knowledge that the DISTRICT has allowed other agricultural contractors to operate under the same agricultural exemptions that the DISTRICT has denied to DIAMOND D.

32.    Instead of answering DEFTY and DIAMOND D's Cross-Complaint, and cooperating with Plaintiffs to efficiently and expeditiously obtain judicial review of the validity of District Policy 24, the DISTRICT responded to the Cross-Complaint with an anti-SLAPP motion to dismiss, brought pursuant to California Code of Civil Procedure ("C.C.P.") §425.16.  The anti-SLAPP statute was enacted because (C.C.P. §425.16(a)):

> The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process.

33.    The anti-SLAPP motion brought on behalf of the DISTRICT was a perversion of the anti-SLAPP statute, because it attempted to use the statute to do the exact opposite of what the Legislature intended.  The anti-SLAPP statute provides for an automatic stay of discovery, and includes an asymmetrical attorney's fee provision that awards mandatory attorneys' fees to the moving party, but only provides attorneys' fees to the party defending against an anti-SLAPP

motion if that party shows that the motion was frivolous or brought in bad faith for an improper purpose. Thus the DISTRICT, first through its Complaint purportedly seeking excessive damages for trumped up and fictitious claims of repeated violations of H&SC provisions and published DISTRICT rules, and then by filing its baseless anti-SLAPP motion, sought to punish and intimidate DEFTY and DIAMOND D for daring to challenge the DISTRICT's attempt to enforce a secret *de facto* Rule that contradicts express statutory language and published DISTRICT Rules providing agricultural exemptions to certain permitting, opacity, and public nuisance regulations.

34. The Yolo County Superior Court denied the DISTRICT's anti-SLAPP motion, holding it did not apply to a challenge to the validity of a policy or rule upon which the DISTRICT's NOVs were based. Undeterred by the long line of precedents holding that the anti-SLAPP statute does not apply to challenges of agency acts of governance, the DISTRICT appealed, and during the course of the appeal, attempted to re-invent its explanation of Policy 24 by contradicting its previous sworn discovery responses and declarations by named defendants Pinnow and Hensleigh. Thus in its Appellants' Opening Brief ("AOB") at 41, the DISTRICT asserted: "Policy 24 has no independent legal effect and the District has never relied on, or cited to, Policy 24 as authority for issuing any permit, NOV, or commencing any civil enforcement action." Continuing on, the DISTRICT's AOB at 42 asserts:

> Policy 24 does not dictate, constrain, or create binding requirements on the District's enforcement discretion. ... Critically, because Policy 24 is merely used for internal guidance, the District does not consider acts that contradict Policy 24 to be violations of law subject to enforcement. ... Importantly, Policy 24 is not mandatory. District Staff do not have to use Policy 24 when making discretionary enforcement or ministerial permitting decisions. [Citations to record omitted.]

The DISTRICT's re-invented characterization of Policy 24 in an attempt to support its anti-SLAPP motion was not a good faith legal argument or alternative interpretation of an ambiguous policy. It was a knowing and deliberate misrepresentation of the Policy as presented to Plaintiffs by the DISTRICT's counsel during the meeting on April 19, 2024, ratified by District representatives Bennit, Hensleigh and Pinnow – who were present at that meeting – and a knowing and deliberate misrepresentations of the previous sworn discovery responses and

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS                    17

declarations of DISTRICT's representatives – including Hensleigh and Pinnow, undoubtedly approved by Bennit – all made by the DISTRICT and its counsel as part of their efforts to retaliate against and punish DEFTY and DIAMOND D for daring to challenge the DISTRICT's attempt to coerce Plaintiffs into acceding to Policy 24.  DISTRICT representatives and their counsel were fully aware that if they confirmed the true purpose and nature of Policy 24 – as a binding, secretly adopted, and unpublished rule applied to limit express agricultural exemptions – the DISTRICT's attempt to abuse the anti-SLAPP statute to prevent judicial review of Policy 24 would fail. Defendants therefore conspired to misrepresent Plaintiff's Cross-Complaint and to mis-characterize the DISTRICT's use of Policy 24 in a further attempt to prevent judicial review of Policy 24, and to further penalize Plaintiffs with the threat of substantial costs and attorneys' fees.

35.     On April 27, 2026, California's Third District Court of Appeal rejected the DISTRICT's arguments and affirmed the Superior Court's order denying the DISTRICT's anti-SLAPP motion.  "We conclude the causes of action alleged in the cross-complaint do not arise from district's protected activities because they challenge the validity of the policy upon which the activities were purportedly based."  Opinion at 2.

36.     Defendants' course of conduct as alleged above has been the direct and proximate cause of substantial damages suffered by Plaintiffs.  Defendants' false allegations that Plaintiffs were serial violators of environmental laws and regulations has damaged Plaintiffs' reputations in their business, and has deterred potential clients from retaining DIAMOND D.  Defendants' threats of further enforcement activities and unjustified exorbitant fines and penalties have deterred other agricultural producers and service providers from supporting Plaintiffs' position, and have also resulted in DIAMOND D curtailing its efforts to market its services to avoid further unjustified fines and penalties, and further legal expenses defending against them.  DIAMOND D has invested millions of dollars in a fleet of equipment to support its orchard grinding services. Defendants' course of conduct has resulted in approximately $6 million of capital being parked with minimal and only intermittent use. Plaintiffs estimate that this has resulted in lost profits of in excess of $1.3 million annually since June 2024.  Plaintiffs' cumulative losses are estimated to exceed $3 million, are ongoing, and will be the subject of proof in detail at trial.

**FIRST CAUSE OF ACTION – VIOLATION OF PLAINTIFFS' RIGHTS TO PROCEDURAL DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS**

**(Against ALL DEFENDANTS)**

37.    PLAINTIFFS reallege and incorporate by reference each and every allegation set forth in paragraphs 1 through 36 above.

38.    The actions of all Defendants alleged above were done under the color and pretense of state statutes and regulations, customs, policy and useage of the defendant YOLO-SOLANO AIR QUALITY MANAGEMENT DISTRICT.  The actions of the DISTRICT were approved by the DISTRICT's highest ranking officer defendant Bennit, and supported by false and misleading declarations by defendants DISTRICT representatives Hensleigh and Pinnow.

39.    The DISTRICT's alleged adoption of Policy 24, *i.e.*, its "policy on this agricultural exemption issue" is in fact a violation of the plain language of a number of statutes and published regulations, including but not limited to H&SC §41704 and DISTRICT Rule 3.2, Exemption 107, which expressly provide agricultural exemptions that by their unambiguous language apply to the agricultural operations performed by DIAMOND D that purportedly gave rise to the DISTRICT's NOVs against DIAMOND D and the DISTRICT's subsequent enforcement action against DEFTY, DIAMOND D, and KNOTTY WOOD.

40.    DEFENDANTS' conduct alleged above deprived Plaintiffs of property rights created by statute and the DISTRICT's own published Rules, and deprived Plaintiffs of those property rights without actual or constructive notice of the DISTRICT's secret rule or Policy revoking the agricultural exemptions provided by statute, and without a meaningful opportunity to challenge the DISTRICT's secret rule or Policy before the DISTRICT filed its Complaint.  The DISTRICT's conduct in misrepresenting its enforcement of Policy 24 in support of the DISTRICT's misuse of the anti-SLAPP statute was a further and independent violation of Plaintiffs' procedural due process rights to seek judicial review of Policy 24.

41.    The conduct of DEFENDANTS, and each of them, deprived Plaintiffs of the rights, privileges, and immunities secured by the Constitution of the United States, including the right to procedural due process of law under the Fifth and Fourteenth Amendments.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS                    19

42. As a direct and proximate result of the course of conduct alleged above, Plaintiffs have suffered damages in an amount in excess of $3 million. Plaintiffs' damages are ongoing and will be the subject of proof at trial.

43. Defendants conduct as alleged above was deliberate and malicious, undertaken with the intent of injuring Plaintiffs and depriving Plaintiffs of their constitutionally protected civil liberties. Plaintiffs are therefore entitled to exemplary and punitive damages against Defendants, and each of them, in an amount sufficient to deter such conduct by Defendants and others in the future.

44. Plaintiffs are entitled to an award of reasonable attorneys' fees incurred in enforcing an important right affecting the public interest pursuant to California Code of Civil Procedure ("C.C.P.") §1021.5 and in enforcing Plaintiffs' constitutional rights pursuant to Civil Code §52.1(h).

WHEREFORE, Plaintiffs pray for judgment as set forth below.

## SECOND CAUSE OF ACTION – VIOLATION OF PLAINTIFFS' RIGHTS TO SUBSTANTIVE DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS

### (Against ALL DEFENDANTS)

45. DEFTY realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 44 above.

46. In the course of preparing its anti-SLAPP motion and subsequently responding to DEFTY and DIAMOND D's Opposition to that motion, the DISTRICT apparently realized that it was problematic for the DISTRICT to describe Policy 24 as having **"been consistently applied *to all sources, including agricultural service providers,* some of which have been subject to Notices of Violations issued by the District."** (See paragraphs 28-30 above.) The DISTRICT then pivoted to describing Policy 24 as entirely "discretionary" and "merely used for internal guidance," which District staff is free to ignore. Thus the DISTRICT's AOB filed with California's Third District Court of Appeal asserts (at 39): "The Cross-Complaint rests on the faulty premise that Policy 24 is somehow a binding secret regulation." The DISTRICT's AOB

goes on to assert (at 41):

> Indeed, none of the People's causes of action rely on, reference, or cite to Policy 24. ... Here, Policy 24 has no independent legal effect and the District has not relied on, or cited to, Policy 24 as authority for issuing any permit, NOV, or commencing any civil enforcement action. ...

And (AOB at 42-43):

> Policy 24 does not dictate, constrain, or create any binding requirements on District's enforcement discretion. ... Critically, because Policy 24 is merely used for internal guidance, the District does not consider acts that contradict Policy 24 to be violations of law subject to enforcement. (... Hensleigh Decl. at ¶27-37; ...). Importantly, Policy 24 is not mandatory. District Staff do not have to use Policy 24 when making discretionary or ministerial permitting decisions. ... Policy 24 in no way changes, abrogates, or limits how District Staff make ministerial permitting or discretionary enforcement decisions consistent with Rule 3.2, Section 107. [Citations to record on appeal omitted.]

The DISTRICT's allegations rely on the declarations of DISTRICT representatives, including defendants Hensleigh and Pinnow. For example, in support of the DISTRICT's anti-SLAPP motion, Hensleigh declared:

> The District does not consider acts inconsistent with the Policy to be violations of law. Agency staff retain discretion in implementing District Rule 3.2, section 107, but may or may not use Policy 24 as a reference or guidance. Use of Policy 24 by agency staff in permitting decisions is optional.

47. The constitutionally protected right to substantive due process protects against government power arbitrarily and abusively exercised, in a way that "shocks the conscience." See, e.g., County of Sacramento v. Lewis (1998) 523 U.S. 833, 846-849. "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscious-shocking level." Id. at 849 [citations omitted]. The DISTRICT's course of conduct as alleged above meets this standard. First, Defendants purported to enforce an unpublished secret rule, eventually identified in the DISTRICT's Complaint as Policy 24, that directly contradicted express statutory language creating agricultural exemptions, without complying with the statutory required rule-making procedure. Second, the DISTRICT selectively enforced Policy 24, choosing to make DEFTY and DIAMOND D examples by which the DISTRICT could force agricultural operations contractors to acceded to the secret rule. Third, Defendants manufactured three individual NOVs directed to DIAMOND D months after the allegedly violating conduct, and refused to explain the basis for the NOVS except in a meeting

conducted by DISTRICT counsel under a confidentiality agreement. Fourth, when DEFTY and DIAMOND D refused to accede to the DISTRICT's secret rule and instead announced that they would seek judicial review by means of an action for declaratory relief, the DISTRICT filed a pre-emptive enforcement Complaint seeking exorbitant daily damages for alleged hundreds of days of violations against DEFTY, DIAMOND D, and KNOTTY WOOD, even though the DISTRICT had previously only disclosed three NOVs based on three specified days of alleged violations by only DIAMOND D. Fifth, when DEFTY and DIAMOND D filed their Cross-Complaint seeking declaratory relief specifically limited to the DISTRICT's enforcement of Policy 24, the DISTRICT responded with a baseless anti-SLAPP motion attempting to prevent judicial review of Policy 24 and further punish DEFTY and DIAMOND D with asymmetric attorneys' fees for daring to resist the DISTRICT's scheme. Sixth, Defendants intentionally contradicted their previous explanations and sworn discovery responses and created a false narrative of Policy 24 as an entirely discretionary internal guidance document because they realized that their previous explanations of Policy 24 confirmed that it was unprotected government action not subject to the anti-SLAPP motion. Seventh, Defendants intentionally misrepresented the relief sought by Plaintiffs' Cross-Complaint – including be presenting the Court of Appeal with deceptively edited portions of the Cross-Complaint – and misrepresented the facts that led to Plaintiffs' filing of the Cross-Complaint in an effort to support their baseless anti-SLAPP motion to prevent judicial review of Policy 24. All of the conduct summarized above and in this Complaint, was engaged in and ratified by all Defendants and was deliberate, served no legitimate government purpose – and in fact undermined the goal of protecting air quality – was oppressive, and was intended to prevent, chill, and burden constitutionally protected rights to due process and to the exercise of their First Amendment rights to freedom of speech and the right to petition.

48. The conduct of Defendants, and each of them, deprived Plaintiffs of the rights, privileges, and immunities secured by the Constitution of the United States, including the right to equal protection under the Fourteenth Amendment.

49. As a direct and proximate result of the course of conduct alleged above, Plaintiffs

have suffered damages in an amount in excess of $3 million. Plaintiffs' damages are ongoing and will be the subject of proof at trial.

50.    Defendants conduct as alleged above was deliberate and malicious, undertaken with the intent of injuring Plaintiffs and depriving Plaintiffs of their constitutionally protected civil liberties. Plaintiffs are therefore entitled to exemplary and punitive damages against Defendants, and each of them, in an amount sufficient to deter such conduct by Defendants and others in the future.

51.    Plaintiffs are entitled to an award of reasonable attorneys' fees incurred in enforcing an important right affecting the public interest pursuant to C.C.P. §1021.5 and in enforcing Plaintiffs' constitutional rights pursuant to Civil Code §52.1(h).

WHEREFORE, Plaintiffs pray for judgment as set forth below.

### THIRD CAUSE OF ACTION – VIOLATION OF PLAINTIFF'S RIGHTS TO EQUAL PROTECTION UNDER THE LAW UNDER THE FOURTEENTH AMENDMENT

### (Against ALL DEFENDANTS)

52.    Plaitniffs reallege and incorporate by reference each and every allegation set forth in paragraphs 1 through 51 above.

53.    As explained above (paragraphs 21-23, 29-30), Defendants initially presented Policy 24's restriction of agricultural exemptions as a policy that "has been consistent for the past 24 years" and as having **"been consistently applied *to all sources, including agricultural service providers,* some of which have been subject to Notices of Violations issued by the District."** (See, e.g., paragraphs 23, 30 above.) Defendants reversed course when they needed to support their anti-SLAPP motion in an attempt to thwart Plaintiff's right to seek judicial review, and then pivoted to describing Policy 24 as entirely "discretionary" and "merely used for internal guidance," which DISTRICT staff was free to ignore when exercising their enforcement discretion. Thus the DISTRICT's AOB at 42 asserts:

> Policy 24 does not dictate, constrain, or create binding requirements on the District's enforcement discretion. ... District Staff do not have to use Policy 24 when making discretionary enforcement or ministerial permitting decisions. [Citations omitted.]

54.    The DISTRICT's arguments in support of its anti-SLAPP motion were

disingenuous and demonstrate that the DISTRICT's purported enforcement actions against DEFTY, DIAMOND D, and KNOTTY WOOD were vindictive, retaliatory, *not* based on a longstanding consistently enforced Policy, and indeed counterproductive to the DISTRICT's statutory mission to protect and enhance air quality. At a minimum, the DISTRICT's repeated contradictory assertions about its interpretation and enforcement of Policy 24 demonstrate that its enforcement of Policy 24 against DEFTY and DIAMOND D has been arbitrary and capricious. Thus at the same time the DISTRICT was arguing that Policy 24 was merely a discretionary internal guidance document, the DISTRICT also argued in support of is anti-SLAPP motion:

> Policy 24 is grounded on the practical realities of modern agriculture and accords with decades-old controlling precedents. ***Policy 24 is the only legally rational interpretation of the District's agricultural exemption at Rule 3.2, section 107.***" [Emphasis added.]

Similarly, the DISTRICT argued in support of its anti-SLAPP motion in the Superior Court:

> "Policy 24 ***explicitly states*** that Rule 3.2, section 107 ***does not apply*** to activities: not performed on the farm where the crops are grown, by the farmer … who owns or operates the farm where the crops are grown; …; or to equipment used in activities that are carried on to produce a separate valuable commercial commodity.'" [Bold added.]

55.   It is disingenuous and arbitrary and capricious for Defendants to assert that Policy 24 is purely discretionary, for internal guidance only, and DISTRICT staff is free to disregard it, while at the same time insisting that "***Policy 24 is the only legally rational interpretation of the District's agricultural exemption at Rule 3.2, section 107,***" and that it "***explicitly states***" that the agricultural exemptions expressly provided by statute and DISTRICT Rule 3.2, exemption 107 "***does not apply*** to activities *not performed on the farm …, by the farmer*." [Emphasis added.]

56.   Defendants' changing and inconsistent arguments confirm that the DISTRICT'S interpretation and implementation of its Policy 24 violate the equal protection clauses of California Constitution Article 1, §7, and of the 14th Amendment to the U.S. Constitution. A regulation or policy that treats similarly situated persons differently requires that "'distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose,'" often referred to as the "'rational basis'" standard. *In re Marriage Cases* (2008) 43 Cal.4th 757, 832 (citation omitted). The obvious purposes of the relevant statutes is to preserve

and enhance air quality, while also preserving the agricultural industry. A "Policy" that gives DISTRICT staff unfettered discretion on whether to grant or deny agricultural exemptions from specific regulatory requirements, such as opacity limits, does not bear a rational relationship to any of the statutes' legitimate purposes, and instead foments favoritism, corruption, unfairness to regulated parties, and interferes with the statutes' stated purpose of protecting and enhancing air quality while also preserving the agricultural industry and economy.

57.    The conduct of Defendants, and each of them, deprived Plaintiffs of the rights, privileges, and immunities secured by the Constitution of the United States, including the right to equal protection under the Fourteenth Amendment.

58.    As a direct and proximate result of the course of conduct alleged above, Plaintiffs have suffered damages in an amount in excess of $3 million. Plaintiffs' damages are ongoing and will be the subject of proof at trial.

59.    Defendants' conduct as alleged above was deliberate and malicious, undertaken with the intent of injuring Plaintiffs and depriving Plaintiffs of their constitutionally protected civil liberties. Plaintiffs are therefore entitled to exemplary and punitive damages against Defendants, and each of them, in an amount sufficient to deter such conduct by Defendants and others in the future.

60.    Plaintiffs are entitled to an award of reasonable attorneys' fees incurred in enforcing an important right affecting the public interest pursuant to California C.C.P. §1021.5 and in enforcing Plaintiffs' constitutional rights pursuant to Civil Code §52.1(h).

WHEREFORE, Plaintiffs pray for judgment as set forth below.

## FOURTH CAUSE OF ACTION – VIOLATION OF PLAINTIFFS' FIRST AMENDMENT RIGHTS TO FREEDOM OF SPEECH AND TO PETITION FOR REDRESS OF GRIEVANCES

### (Against ALL DEFENDANTS)

61.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in paragraphs 1 through 60 above.

62.    The conduct of DEFENDANTS, and each of them, deprived Plaintiffs of their

First Amendment rights to freedom of speech and to petition for the redress of grievances. Plaintiffs' challenge to the DISTRICT's secret rule or so-called "Policy 24," as effectively revoking agricultural exemptions provided by statute, and adopted without following the rule making procedures required by statute, and therefor in violation of the DISTRICT's authority granted by statute, are within the core protections of the First Amendment.

63. Defendants' conduct as alleged above was intended to and did in fact chill Plaintiffs' exercise of First Amendment rights, and would chill a person of ordinary firmness from continuing to engage in the constitutionally protected activities of challenging government agency over-reach, incorrect interpretations of statutory requirements, and abuse of power.

64. The sum total of Defendants' conduct demonstrates that chilling Plaintiffs' protected activity was a substantial and motivating factor in Defendants' course of conduct, from issuing the initial three NOVs to DIAMOND D, to demanding acquiescence to the DISTRICT's secret Policy 24 as a prerequisite to resolving the NOVs, to filing the DISTRICT's pre-emptive purported enforcement Complaint to put even more pressure on Plaintiffs to surrender on DEFTY and DIAMOND D's cross-complaint for declaratory relief, to filing an anti-SLAPP motion to dismiss supported by false allegations and the threat of asymmetrical attorneys' fees in a further attempt to penalize and intimidate Plaintiffs and others who might consider similar exercises of their First Amendment rights in response to an abuse of DISTRICT power.

65. The conduct of Defendants, and each of them, deprived Plaintiffs of the rights, privileges, and immunities secured by the Constitution of the United States, including Plaintiffs' First Amendment rights to freedom of speech and the right to petition for redress.

66. As a direct and proximate result of the course of conduct alleged above, Plaintiffs have suffered damages in an amount in excess of $3 million. Plaintiffs' damages are ongoing and will be the subject of proof at trial.

67. Defendants conduct as alleged above was deliberate and malicious, undertaken with the intent of injuring Plaintiffs and depriving Plaintiffs of their constitutionally protected civil liberties. Plaintiffs are therefore entitled to exemplary and punitive damages against Defendants, and each of them, in an amount sufficient to deter such conduct by Defendants and

others in the future.

68.    Plaintiffs are entitled to an award of reasonable attorneys' fees incurred in enforcing an important right affecting the public interest pursuant to C.C.P. §1021.5 and in enforcing Plaintiffs' constitutional rights pursuant to Civil Code §52.1(h).

WHEREFORE, Plaintiffs pray for judgment as set forth below.

## PRAYER

WHEREFORE PLAINTIFFS DEFTY and DIAMOND D pray for judgment as follows:

1.    For an order declaring that DEFENDANTS have violated Plaintiffs' constitutionally guaranteed civil rights protected by the First, Fifth and Fourteenth Amendments;

2.    For an award of compensatory damages against DEFENDANTS, and each of them, in an amount of at least $3 million plus ongoing damages incurred by Plaintiffs as a result of DEFENDANTS' past and continuing violation of Plaintiffs' constitutionally protected civil liberties, or such other amount as will be proven at trial as just and reasonable to compensate Plaintiffs for the damages directly and proximately caused by DEFENDANTS' violations of Plaintiffs' civil rights.

3.    For an award of punitive damages against DEFENDANTS and each of them, in an amount sufficient to deter similar conduct by DEFENDANTS and others;

4.    For an award of attorneys' fees pursuant to C.C.P. §1021.5;

5.    For all costs incurred in this action;

6.    And for such further relief as the Court may deem appropriate.

Dated:   May ___17___, 2026.

_____
Klaus J. Kolb,
Attorney for PLAINTIFF
SPENCER DEFTY, dba DEFTY FARMS

Dated:   May ___17___, 2026.

_____
Ameet O'Rattan Sharma
Attorney for PLAINTIFF
DIAMOND D GENERAL ENGINEERING, INC.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS          27